```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *    Case No. 16-MJ-674(LB)
                              *
                              *    Brooklyn, New York
                              *    July 20, 2016
    v.                        *
                              *
MARK JOHNSON,                 *
                              *
            Defendant.        *
                              *
* * * * * * * * * * * * * * * *

         TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
              BEFORE THE HONORABLE LOIS BLOOM
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:           CAROL L. SIPPERLY, ESQ.
                              WINSTON M. PAES, ESQ.
                              Asst. United States Attorney
                              United States Attorney's Office
                              271 Cadman Plaza
                              Brooklyn, NY 11201


For the Defendant:            FRANK HAROLD WOHL, ESQ.
                              KEVIN KOLLER, ESQ.
                              Lankler Siffert & Wohl LLP
                              500 Fifth Avenue
                              33rd floor
                              New York, NY  10110
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1        (Proceedings commenced at 3:33 p.m.)
2            THE CLERK:  Criminal cause for arraignment, it's
3    16-M-674, United States vs. Mark Johnson.  Counsel, state
4    your appearances.
5            MS. SIPPERLY:  Carol Sipperly and Winston Paes for
6    the United States.
7            MR. WOHL:  Frank Wohl and Kevin Koller of Lankler
8    Siffert & Wohl for Mr. Johnson.
9            THE COURT:  Good afternoon, Mr. Johnson.
10           THE DEFENDANT:  Good afternoon.
11           THE COURT:  Mr. Johnson, the purpose of today's
12   proceeding is to make sure that you understand the nature of
13   the charges being made against you by the United States and
14   to make sure that you understand that you have certain
15   Constitutional rights.
16           First, you have the right to be represented by an
17   attorney at today's proceeding and at all future proceedings
18   before the court.  You have retained Mr. Wohl and his firm,
19   but if for any reason you're unable to afford counsel, you
20   may make an application to the court and the court would
21   grant and find you counsel.
22           You have the right to remain silent.  If you
23   started to make a statement, you may stop.  Any statement you
24   make to anyone, other than your attorney, can be used against
25   you.  Do you understand that?  You have the right to counsel

1    and the right to remain silent.
2            THE DEFENDANT:  Yes, I do.
3            THE COURT:  Mr. Johnson, have you had the
4    opportunity to review the complaint and affidavit in support
5    of the application for the arrest warrant that was filed
6    against you in this matter?
7            THE DEFENDANT:  Yes, I have.
8            THE COURT:  And do you understand the charges that
9    are being made against you?
10           THE DEFENDANT:  I understand.
11           THE COURT:  And Mr. Wohl, have you had the
12   opportunity to review the arrest warrant and affidavit with
13   your client?
14           MR. WOHL:  Yes, Your Honor.
15           THE COURT:  Do you believe he understands the
16   charge?
17           MR. WOHL:  Yes, I do, Your Honor.
18           THE COURT:  And have you advised him of his
19   constitutional rights?
20           MR. WOHL:  I advised him of what -- what he just
21   heard you say, Your Honor, I think covers it at this point. I
22   described to him the purpose of the hearing today.
23           THE COURT:  Thank you.
24           I have been presented with an order setting the
25   conditions of Mr. Johnson's release, which I imagine was

1    negotiated between the parties. Is that correct?
2                MS. SIPPERLY:  There have been negotiations.  Yes,
3    I didn't know if they were finalized with the co-signer
4    question.
5                THE COURT:  I don't know if they were finalized
6    either.
7                MS. SIPPERLY:  I could tell you what the status is
8    at this moment.
9                THE COURT:  Thank you.
10               MS. SIPPERLY:  There's an understanding that there
11   will be a million dollar bond signed by the defendant, co-
12   signed by his wife electronically over the next three --
13   within the next three days.
14               There'll be $300,00 and I know the account shows
15   it's in pounds, but we're asking for $300,000 -- an account -
16   - the case to secure that million dollars with the additional
17   property to be included.
18               THE COURT:  Let me take a step back.
19               The wife is going to co-sign but you're not
20   requiring him to remain in custody until the wife co-signs?
21               MS. SIPPERLY:  Well, that was the one place there's
22   a question.  We thought perhaps there'd be an individual here
23   in New York who could come sign today for his release and
24   then his wife also signed --
25               THE COURT:  His wife is in London.

1          MS. SIPPERLY:  Yes, in the UK.
2          THE COURT:  And --
3          MS. SIPPERLY:  I'm not quite -- London, but UK,
4    yes.
5          MR. WOHL:  I don't know -- I should say, Your
6    Honor, I'm not sure whether we have somebody who could sign
7    today.
8          I think Your Honor this case really does present a
9    situation where it would be appropriate to go ahead without
10   the cosigner until we get the $300,000 put up, which I think
11   we will be able to do within the next two days.
12         THE COURT:  The risk here is not that Mr. Johnson
13   won't have access to funds, Mr. Wohl.  The risk here, quite
14   frankly, it's not because he has any prior history of
15   criminal behavior.  So it's not a risk to the community of
16   danger, but it is that he needs to surrender his passport,
17   which I imagine the agents have already taken from him.
18         MS. SIPPERLY:  That's correct.
19         THE COURT:  He cannot apply for any travel
20   documents. He must report to Pretrial services as directed.
21         We must have a place where he can be located for
22   the duration while these charges are pending. He's not going
23   to be able to fly out of the country.
24         So I don't know if somebody was coming. I don't
25   know if the $300,000 was going to be deposited with the clerk

6

1    of the court.
2             MS. SIPPERLY:  That's the understanding, that that
3    would happen, but we were told it would take a couple of
4    days.
5             THE COURT:  The $300,000 would take a couple of
6    days?
7             MS. SIPPERLY:  Yes.
8             MR. WOHL:  Right, because we just got it -- we just
9    were talking about this today and it's already like 8 o'clock
10   at night in London and so we can't get the money here today.
11   I think we should be able to get it here tomorrow.
12            THE COURT:  I wouldn't think that would be a great
13   difficulty for the government to agree for him to have a day.
14   He has no passport.  Mr. Wohl will have to say where he's
15   going to be staying.
16            They could deposit the money into the court. We'd
17   have to give Mr. Wohl an order so that they'd accept it
18   downstairs for the $300,000 and at the same time we could
19   ship this order over to somebody in the UK for them to sign.
20   His wife or whoever else it going to be.
21            I'm sure that he has other property that could be
22   listed as collateral here.  Does your client own any property
23   in the United States?
24            MR. WOHL:  He owns virtually no property in the
25   United States, Your Honor. I should say that the irony of

1  this case, Your Honor, is that he was in the process of being
2  transferred by his employer from London to the United States
3  and he spent the last several weeks, if not months,
4  organizing his life here in the United States and bringing
5  his family, which consisted of a wife and six children who
6  are now in London, to the United States to live here for the
7  next two or three years.  But he doesn't have any actual
8  property here in the United States.
9            We have agreed that once he puts up the $300,000
10 then we would discuss with the government in effect
11 substituting a mortgage on his house in London, which I
12 understand there's a way that the government can do that, but
13 it does take some time.
14           So we would substitute that and possibly negotiate
15 whether or not they still need to hold onto the cash or not
16 and how much is necessary to secure the bond.
17           THE COURT:  There was an address listed on the
18 Pretrial Services report of 21 West 86th Street, apartment
19 2C.
20           MR. WOHL:  That's the apartment that he's rented
21 for himself, his wife and his six children.
22           THE COURT:  So we can list that as where he will
23 be.
24           MR. WOHL:  Yes.
25           THE COURT:  And I don't see that this is a stretch.

1   I think that he should be given the time to submit the cash.
2   Whether or not you want to negotiate that he'll substitute a
3   mortgage is completely up to the government. I'm not going to
4   vet the property in the UK and see what can be done with
5   that, yes.
6           MS. SIPPERLY:  Could I just clarify?
7           THE COURT:  Certainly.
8           MS. SIPPERLY:  The understanding is that the house
9   -- the equity in the house will cover the balance of the
10  bond.
11          So if $300,000 in cash is covered, we will still --
12  expecting the $700,000 covered with the house.
13          THE COURT:  I am noting for Mr. Wohl's benefit and
14  Mr. Johnson's benefit that this is a $1 million promise and
15  that generally for that much of a bond we'd have to have
16  several financially stable suretors to come sign.
17          I understand that he was arrested at the airport as
18  he was about to leave and that he may have to make
19  arrangements to get other people to sign this bond.
20          And so, again, the government would have the option
21  to interview anybody that he's proposing as a suretor, but I
22  believe for the short run we can give him a day to come back.
23  That he doesn't need to be held in custody.  That we can give
24  him until tomorrow to post this bond and to figure out who's
25  going to come back to sign.  Does that sound agreeable?

1          MS. SIPPERLY:  Yes.  And then we've agreed that
2   there will be paperwork that UK counsel for Mr. Johnson will
3   have to prepare for the mortgage piece that gives further
4   security to the government on the bond.
5          THE COURT:  Again, Mr. Johnson, I understand that
6   you are to make arrangements, but let me go over what these
7   conditions involve.
8          It is a bond that says that there will be a million
9   dollars, and how many suretors do you believe you need on the
10  bond?
11         MS. SIPPERLY:  So our understanding will be two,
12  one today and then -- if possible --
13         THE COURT:  There is nobody today --
14         MS. SIPPERLY:  Not today. Okay.  Then by tomorrow.
15         THE COURT:  -- is what they're saying.  So I'll say
16  two suretors to sign on the bond. One could be his wife and
17  one could be somebody else who's financially stable. So two
18  suretors.
19         MS. SIPPERLY:  Okay.
20         THE CLERK:  Judge, I need the date.
21         THE COURT:  Tomorrow's date is the 21st, right?
22         THE CLERK:  All right.
23         THE COURT:  And if for a reason that, you know,
24  that is not clear to me, there's a problem, you'll raise that
25  with the U.S. Attorney on the case and you'll make an

10

1  arrangement by when the suretor can sign. I understand we're
2  in a different time zone. I also have no idea what Mr.
3  Johnson's wife does or whether she'd be the financially
4  stable suretor to sign, but two suretors to sign by 7/21.
5        That you are to remain in -- and it says New York
6  City.  Is there any reason why he needs to travel beyond New
7  York City at this point in time?
8        MR. WOHL:  I don't think so, Your Honor.
9        THE COURT:  And that you must avoid contact with
10 your co-defendant, except with counsel present. I believe
11 your co-defendant is still in the UK and so we're saying
12 avoid contact by telephone, by email, by Skype, all
13 communication. You're under a microscope.  And unless your
14 attorney and your co-defendant's attorney are present, you
15 should not communicate.  And I'll write that without counsel
16 present.
17       And you must surrender your passport and not apply
18 for another and I've been told that the agents will submit it
19 to Pretrial and give you a receipt for your passport, so
20 you'll know Pretrial is holding it.
21       You're placed under the supervision of Pretrial
22 Services.  You're subject to random visits by Pretrial
23 Service at your residence or place of work, and you must
24 report as directed by Pretrial Services in person or by
25 telephone, as they state, and you'll maintain the residence

1    as approved by Pretrial Services, but I'm going to write on
2    the bond, unless there's further notice, it will be at 21
3    West 86th Street, Apartment 2C.  Is that correct?
4               THE DEFENDANT:  Yes.
5               THE COURT:  Thank you.
6               MS. SIPPERLY:  And there as an additional
7    understanding with contact with certain witnesses and victims
8    and I didn't know if Your Honor was getting to that.
9               THE COURT:  I didn't have that listed here, so I
10   will put that.
11              MS. SIPPERLY:  Yes.
12              THE COURT:  So no contact with victims or
13   witnesses.
14              MS. SIPPERLY:   Yes.  And then to the extent
15   witnesses are -- you know, fellow employees and it has to be
16   contact for that purpose, that's understandable.
17              THE COURT:  Well, again, since I'm not listing
18   names, I'll just give you the blanket caution that I say to
19   anybody who's being released.  You're under a microscope.
20   You're still presumed innocent, but any conversations that
21   you have with people, if they do involve the case, may come
22   to light and may not.  And your attorney will advise you may
23   not be in your interest.  So no contact with victims and
24   witnesses.
25              So I've written that two suretors are to sign by

12

1   7/26.  And cash shall be deposited in the registry.  A sum of
2   $300,000 United States dollars.
3           MS. SIPPERLY:  Yes.
4           THE COURT:  We usually don't have to write that,
5   but just to be clear I'll make that clear here.  And that's
6   going to be by tomorrow as well, Mr. Wohl.
7           MR. WOHL:  Yes.
8           THE COURT:  Or do you need more time?
9           MR. WOHL:  If Your Honor could make it by Friday,
10  that would just give us an extra day to make sure.
11          I actually think we're going to have it tomorrow.
12          THE COURT:  So I'll give it to you -- do you mind
13  if I give him the suretors --
14          MS. SIPPERLY:  No.
15          THE COURT:  -- by 7/22?  I like everything to be
16  the same date.
17          MS. SIPPERLY:  That's absolutely fine.
18          THE COURT:  So by 7/22. I'm going to change it on
19  the bond, Mr. Wohl, and give you both to have the suretors
20  sign and to have the $300,000 deposited by 7/22 instead of
21  7/21.
22          MR. WOHL:  Thank you, Your Honor.
23          THE COURT:  It gives you the extra elbow room.
24          I'm required by law to give you the following bail
25  warnings, Mr. Johnson.

1          If for any reason you do not come back to court
2  when you're directed to do so, agents will be dispatched.
3  You'll be arrested. You'll be brought back to the court and
4  the likelihood is you will not be released again pending you
5  trial on these charges.
6          In addition, there's a separate federal crime
7  called bail jumping.  If you don't come back to court and
8  you're prosecuted for bail jumping, you can be sentenced to
9  ten years in prison, even if you're never convicted of the
10 crime for which you stand accused today.
11         Last, but not least, if you commit any other crime
12 while you're out on bail, they can enhance the penalty for
13 the crime you committed. If you commit a felony in New York
14 while out on bail, they can add ten years to the sentence for
15 the crime because you committed the crime while out on bail.
16         Do you understand those warnings?
17         THE DEFENDANT:  Yes.
18         THE COURT:  And will you come back to court
19 whenever you're directed to do so?
20         THE DEFENDANT:  I will.
21         THE COURT:  And will you abide by all of the other
22 conditions as set forth on the bond?
23         THE DEFENDANT:  Yes, I will.
24         THE COURT:  Then I will pass this forward.
25         Mr. Wohl, have you discussed a preliminary hearing

14

1    with Mr. Johnson?
2             MR. WOHL:  Yes.  Yes, Your Honor.
3             THE COURT:  And are you prepared to waive or are
4    you requesting it to be scheduled?
5             MR. WOHL:  We're prepared to waive, Your Honor.
6             THE COURT:  The preliminary hearing is waived.
7             May I ask, where do you think that the wife is
8    going to be able to sign in the UK?  Since generally we do
9    this in another district court, is there a consulate office?
10            MS. SIPPERLY:  There's an embassy that we've often
11   used. I don't know if that's easy enough access.  It's in
12   London.
13            MR. WOHL:  I think the problem is, Your Honor, that
14   --
15            THE COURT:  We need to be able to send the bond
16   somewhere and it has to be somewhere where somebody's going
17   to swear the person to the truth of who they are and what
18   they're signing.  And that's why, again, I said two suretors.
19   I didn't say his wife.  They want his wife on the bond
20   because she probably co-owns property and you're going to
21   want to substitute the property.
22            But at this point in time, you have $300,000 and
23   two suretors to get by Friday.  And our clerks here need to
24   know where the bond would be sent, or else we have no way of
25   getting it to a place where they can swear out the suretor.

15

          So I'll ask you to put your heads together. Otherwise, you get two suretors here by Friday and get the $300,000 here by Friday.  And I'm signing an order here that you're going to need for them to accept the cash bail downstairs.  And again, I'm reminding you, as counsel stated, that you are going to be committed to a million dollar bond. Just $300,000 of it is being put forward in cash, as the mortgage piece of this for property is out of the country and would be more difficult to secure.

          So again, you'll work with your attorney and with the United States Attorney's Office to figure out where it could be sent, but we would need to know. Otherwise, there's no way to get a bond signed in a foreign country without us making some arrangements.

          MS. SIPPERLY:  Right.  We know of the embassy, but if there's some other way that we could have that someplace, we'll work with them, obviously.

          THE COURT:  And if not, then you should get two suretors in court by Friday.

          MR. WOHL:  All right, Your Honor.

          THE COURT:  And it could be at either the 11 o'clock or 2 o'clock calendar.  And the $300,000, here's the acceptance of cash bail.

          Were there other matters that needed to be addressed on behalf of the government?

1       MS. SIPPERLY:  No, Your Honor.
2       THE COURT:  And on behalf of Mr. Johnson, I'm
3  signing that he should be released and the conditions of the
4  bond shall be satisfied by Friday, 7/22, as set forth on the
5  record.
6       Anything else, Mr. Wohl?
7       MR. WOHL:  No, Your Honor.
8       THE COURT:  Then this matter is adjourned.  Thank
9  you.
10      MS. SIPPERLY:  Thank you, Your Honor.
11      THE DEFENDANT:  Thank you, Your Honor.
12
13    (Proceedings concluded at  3:50 p.m.  )
14    I, CHRISTINE FIORE, court-approved transcriber and
15 certified electronic reporter and transcriber, certify that
16 the foregoing is a correct transcript from the official
17 electronic sound recording of the proceedings in the above-
18 entitled matter.
19
20    *Christine Fiore*
21  _____          August 17, 2016
22    Christine Fiore, CERT
23
24